**Henry L. WHITED**

v.

**Mary E. WHITED.**

**No. 81–539–Appeal.**

Supreme Court of Rhode Island.

July 12, 1984.

Jerry L. McIntyre, William Landry, Edwards & Angell, Providence, for plaintiff.

Albert J. Mainelli, Kirshenbaum & Kirshenbaum, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from a divorce decree entered in the Family Court in which the trial justice granted the husband's (plaintiff's) petition and the wife's (defendant's) cross-petition for a divorce on the grounds of irreconcilable differences. In her cross-petition, the defendant also charged the plaintiff with extreme cruelty toward her and sought the divorce decree on that ground. The trial justice denied the defendant's cross petition. The defendant further prayed for title and exclusive use of the marital domicile under G.L. 1956 (1981 Reenactment) § 15–5–16.1. The trial justice chose instead to equitably apportion the value of the home and ordered it sold.

The parties were married in 1959. No children were born of this union. However, Mrs. Whited brought two children into the family from her previous marriage. This family lived in a home purchased by plaintiff prior to the marriage. In 1963 plaintiff set up a room in the basement to get away from defendant. The plaintiff entered medical school in Buffalo, New York, in 1966. The defendant remained in the first marital domicile, while plaintiff paid the mortgage, taxes, and utilities on the property. In 1968 this house was sold and defendant and her daughter moved to Buffalo to be with plaintiff. The plaintiff paid defendant's college tuition at the State University of New York at Buffalo, from which she received a college degree.

The plaintiff began his residency at Rhode Island Hospital after he graduated from medical school in June 1970. The defendant received her degree in December 1970 and moved to Rhode Island with plaintiff. For the next five years, plaintiff interned at the hospital and worked nights to buy several boats. The defendant was employed as a substitute teacher during this period. In 1975 serious discord surfaced between the parties. A recitation of specific incidents and facts are not necessary to our disposition of this case on appeal, and we therefore refrain from quoting the extensive record developed below. Suffice it to say that ample evidence existed from which the trial justice could properly conclude that the marriage was irretrievably broken.

In this appeal, defendant raises twelve assignments of error. Six of these assignments relate to evidentiary rulings made by the trial justice during the course of the trial. Two contest the property division made. Two more contest the amount of alimony that defendant was awarded. The last two contest the trial justice's decision on defendant's cross-petition. We shall address defendant's assignments as outlined here. For the reasons stated below, we affirm the trial justice's decision.

## I

### Evidentiary Rulings Made by the Trial Justice

The trial justice permitted Dr. Mohammad Arif to testify about an anonymous telephone call that he received in January 1980. The witness testified that a female caller made derogatory remarks about plaintiff during this conversation. The trial justice also admitted into evidence two copies of unsigned typed letters that maligned plaintiff's reputation and character. The trial justice also sustained plaintiff's counsel's objections to leading questions put to defendant regarding defendant's physical condition. The defendant contends that each of these rulings was error.

■ The standard of review applicable to evidentiary rulings in a divorce proceeding is well established in this state. "In a divorce proceeding, the admission or exclusion of testimony will be found to be reversible error only when the trial justice determines a disputed right on the basis of evidence he erroneously admitted or excluded during trial." *Brierly v. Brierly,* R.I., 431 A.2d 410, 414 (1981) (quoting *Pansey v. Pansey,* 115 R.I. 97, 103, 340 A.2d 120, 124 (1975)); *see also Watmough v. Watmough,* R.I., 430 A.2d 1059, 1060 (1981). Further, "the exclusion or nonexclusion of witnesses is within the sound discretion of the trial justice and that the exercise of such discretion will not be disturbed except in the clearest cases of

abuse." *Poirier v. Poirier,* 107 R.I. 345, 355, 267 A.2d 390, 395–96 (1970).

■ In applying the above standards to the instant case, we find that the trial justice's rulings were proper. The trial justice did not rely on the testimony of Dr. Arif or on the unsigned typed letters in reaching his decision. These items of evidence are not mentioned in his opinion. The only negative evidence that the trial justice considered in determining defendant's conduct during the marriage was an outburst she allegedly made at plaintiff's office. Indeed, the trial justice concluded "that the husband's behavior was such that his fault outweighs the wife's misbehavior * * *." Finally, it was within the trial justice's sound discretion not to allow defendant to testify about "physical changes" that she underwent some months after plaintiff had told her he was leaving. In summary, the trial justice's evidentiary rulings were properly made and did not constitute an abuse of discretion.

## II

### The Property Division

The trial justice ordered the marital domicile sold, with 60 percent of the proceeds to be awarded to defendant and the remaining 40 percent to be awarded to plaintiff. The defendant was also granted a right of first refusal which allowed her to purchase the property by paying 40 percent of its appraised value to plaintiff. The contents of the domicile, that is, the household furniture, furnishings, and effects, were awarded outright to defendant. No other property was awarded to defendant. The defendant argues extensively that the trial justice misapplied the criteria set forth in our equitable-distribution statute, § 15–5–16.1.

■ This statute enumerates four factors to be considered by the trial justice in dividing up the marital estate upon divorce: "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the contribution of each of the parties in the acquisition, preservation, or apprecia-

tion in value of their respective estate; and [4] the contribution and services of either party as a homemaker." In *Wordell v. Wordell*, R.I., 470 A.2d 665, 667 (1984), we noted that "it is within the trial judge's wide discretion, subject to [these] existing statutory guidelines, to effect a just and fair property division between the parties." *Id.* 470 A.2d at 667.

■ The trial justice's opinion discusses each of the enumerated factors at great length. We do not require the trial justice to provide us with an exhaustive analysis of the evidence. *Smith v. Smith*, 119 R.I. 642, 648, 382 A.2d 182, 185 (1978). Here, however the trial justice thoroughly discussed the salient facts and applied those facts to the appropriate statutes in reaching well-reasoned conclusions. The fact that defendant was not awarded an interest in the boats, plaintiff's medical equipment, or his small pension does not in any way imply that the trial justice abused his discretion. "[T]he assignment of property does not depend on the needs of a spouse," and was properly excluded from this part of the trial justice's decision. *D'Agostino v. D'Agostino*, R.I., 463 A.2d 200 at 203 (1983).

### III

#### The Alimony Award

The trial justice determined that defendant was entitled to alimony pursuant to § 15–5–16. The defendant was awarded $150 per week for two years and thereafter $100 per week. The defendant's position is that this award is insufficient in light of her needs and plaintiff's earning capacity.

■ Section 15–5–16 sets forth four criteria that the trial justice must consider in awarding spousal maintenance: "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and [4] the state and the liabilities and needs of each of the parties." Moreover, the trial justice

must consider these factors in light of the fact that "alimony in its modern form [is] a rehabilitative tool designed to provide support for an ex-spouse based on need." *D'Agostino v. D'Agostino*, 463 A.2d at 202. Modern concepts of the marital relationship no longer support the view that alimony is an "extension of a husband's common-law duty to support his wife." *Id.*

■ At trial, a dispute arose over the amount of plaintiff's earnings for the year 1979. The defendant argued that plaintiff's earnings for that year were $11,000 greater than the amount found by the trial justice. Assuming arguendo that plaintiff's 1979 earnings were indeed $11,000 more than the amount found by the trial justice, this disparity does not affect the validity of the trial justice's decision. Earnings were but one of a myriad of factors that the trial justice weighed and evaluated in granting the spousal-maintenance award. In his decision the trial justice also considered the difference in earning power between plaintiff and defendant and weighed defendant's needs and circumstances against plaintiff's ability to pay. *See Pansey v. Pansey*, 115 R.I. 97, 102, 340 A.2d 120, 124 (1975).

### IV

#### Defendant's Cross-Petition

The plaintiff testified that after he and his wife had separated, but before the entry of their final decree of divorce, he began sharing the society of another woman. Pursuant to this testimony, defendant moved to amend her original cross-petition to include adultery as a ground for divorce. This motion was denied by the trial justice. The trial justice did, however, consider the conduct of plaintiff in making the property division and in awarding spousal maintenance. Specifically, the trial justice found that plaintiff's conduct was deleterious to the marital relationship. The defendant now contends that the refusal to allow the amendment constitutes a ground for reversal. We disagree.

In a divorce action, the allowance or disallowance of amendments is a matter of discretion with the trial justice. Such rulings "are not grounds for reversal in the absence of a clear showing that the discretion was either improperly exercised or that there was an abuse thereof." *Poirier v. Poirier,* 107 R.I. at 352, 267 A.2d at 394. We find no such abuse of discretion in the present case. The defendant was not unduly prejudiced by the ruling since the trial justice considered the plaintiff's extramarital relationship in his decision. The record supports the conclusion of the trial justice that this relationship, which began approximately one year after the parties had separated, did not constitute an independent ground for divorce.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Family Court.