**Barbara A. CASEY**

v.

**Richard K. CASEY.**

**No. 82–353–Appeal.**

Supreme Court of Rhode Island.

May 30, 1985.

John E. McCann, Kirshenbaum & Kirshenbaum, Providence, for plaintiff.

Donald R. Lembo, North Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Family Court awarding Barbara A. Casey (wife) an absolute divorce on the grounds both of irreconcilable differences between the parties that have caused the irremedial breakdown of the marriage and of extreme cruelty on the part of Richard K. Casey (husband). The court awarded custody to the wife of a minor child of the parties who was seventeen years old at the time of the decision. The court further assigned to the wife the husband's interest in the marital domicile located in Cumberland, ordered the payment of child support until the child reached her majority, and additionally required the husband to pay alimony as well as his wife's counsel fees. We affirm the judgment in part but remand the case for further consideration in respect to the award of alimony and vacate the award of counsel fees.

In support of his appeal, the husband raises a number of issues that will be addressed in the order in which they appear in his brief. The facts pertinent to this appeal are as follows.

The husband and the wife, who had a child from a previous marriage, were married on July 20, 1959, and subsequently three children were born of the marriage. One of these children was still a minor at the time of the divorce proceedings. The husband has worked in the jewelry business for over twenty-five years as a stone setter. The wife has been employed in various capacities as a licensed practical nurse; and at the time of trial, she was employed as a registered nurse. According to the testimony elicited at trial, the marriage, which suffered in earlier years from a not-usual amount of discord, began seriously to deteriorate prior to the latter part of 1980, at which time the wife filed for divorce and the parties separated pursuant to an *ex parte* restraining order issued against the husband.

The first error asserted relates to the trial justice's determination that the fault for the deterioration of the marriage was attributable to the husband.

After hearing the voluminous testimony given in this bitterly fought divorce, the trial justice in his decision found that the husband had physically and verbally abused the wife for a number of years, had been guilty of excessive drinking, and had engaged in extramarital relationships with other women in contravention of his marriage covenant. The trial justice attached no weight to the testimony of two witnesses called on behalf of the husband, who had been hired by him as private detectives and who attempted to show that the wife had been less than faithful during the period after the separation of the parties but before the divorce was granted.

As an appellate tribunal, it is not our function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial. As we have stated on many prior occasions, the trial court's findings will not be disturbed unless it is demonstrated that the trial justice was clearly wrong or that he misconceived relevant evidence. *Wordell v. Wordell*, R.I., 470 A.2d 665, 667 (1984) (citing *Brierly v. Brierly*, R.I., 431 A.2d 410, 414 (1981)). This same principle applies to the inferences drawn by a trial justice as well as to the credibility and weight that a trial justice attaches to the testimony of those presented as witnesses. *In re Randy B.*, R.I., 486 A.2d 1071, 1073 (1985). A review of the record in this case establishes beyond question that after considering all of the evidence, including that of the *four children* whom he found to be credible and whose testimony ran distinctly counter to the position advanced by the husband, the trial justice was without error in arriving at his conclusion with respect to marital fault.

The second issue raised on appeal is the husband's challenge to the propriety of the award compelling him to assign to his wife his equitable interest in the marital domicile, of which he was an owner with her in joint tenancy. The husband advances three arguments in support of his claim of error in respect to the trial justice's assignment. None, however, is persuasive.

First, the husband asserts that Rhode Island's equitable-distribution statute contains language that should be interpreted to prevent a trial justice from assigning *all* of the estate of one spouse to the other spouse. Since the husband's entire interest in the marital domicile was ordered to be transferred to his wife, the husband claims that this order contravened the language of G.L. 1956 (1981 Reenactment) § 15-5-16.1, which provides,

"[i]n addition to or in lieu of an order to pay alimony made pursuant to a petition for divorce, the court may assign to either the husband or wife *a portion of the estate* of the other." (Emphasis added.) [1]

We need not address at length the husband's argument here for the very obvious reason that even though the husband was ordered to give up his interest in the marital domicile, such interest did not make up his entire estate. In fact, the husband was awarded a bond fund secured in his name, a portion of a vested pension fund at his former place of employment, a coin collection, and his automobile under the terms of the division of the marital assets. We find no abuse of discretion here by the trial justice, who, within the bounds of his statutory discretion, awarded the wife a portion (significant as it may have been to the husband) of the husband's estate after considering each element of the statutory criteria of § 15-5-16.1. [2]

A second argument suggested by the husband in challenging the trial justice's assignment is that in light of the fact that the husband earned approximately 3½ times as much as the wife during the last nine years of the marriage, such increased earnings should have been accorded more weight in the trial justice's determination of what had been contributed by the parties toward the "acquisition, preservation, or appreciation in value" of the parties' estate. Section 15-5-16.1. In addressing this claim, we note that the record discloses

1. Public Laws 1982, ch. 403, § 1, amended G.L. 1956 (1981 Reenactment) § 15-5-16.1, to read in pertinent part as follows:

"In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other."

2. Section 15-5-16.1 enumerates four factors to be considered by the trial justice in dividing up the marital estate upon divorce: "[1] the length of the marriage, [2] the conduct of the parties during the marriage, [3] the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estate; and [4] the contribution and services of either party as a homemaker." In the case at bar, we find that the trial justice was not remiss in considering each of these factors before making his award.

that the trial justice, in assigning the marital assets of this couple, was acutely aware of the fact that the husband earned more than the wife. Nevertheless, the trial justice, in making the assignment, considered with equal weight the value of the wife's services as a homemaker as well as the amounts contributed by her from the various jobs she held as a nurse during the course of the marriage. In so doing, he committed no error in light of our existing law on this subject. In this state we recognize that a spouse who is not the principal wage earner but who has acted in the capacity of homemaker and child-rearer, or who has made other nonmonetary contributions enhancing the marital relationship, may be granted an award in the exercise of the trial justice's discretion based upon these contributions after consideration of all of the factors enumerated under our equitable-distribution statute.[3] In the instant case, the record discloses that the trial justice acted well within the dictates of the statute.

A final claim by the husband with respect to the assignment is that the trial justice weighted the element of fault too heavily before ordering the assignment of the husband's interest in the marital domicile. We note that although the trial justice adverted to the husband's fault as a dominant reason for the dissolution of the marriage in another section of his decision, there is nothing in the trial justice's decision in respect to the assignment of the parties' estate to indicate that fault was accorded undue significance in comparison with the other elements that the trial justice both considered and enumerated under the equitable-distribution statute.

■ We next address the husband's claim that the trial justice erred in ordering the husband to pay alimony of $25 a week. In support of his argument the husband urges that the trial justice ordered payment without regard to any of the criteria outlined in G.L. 1956 (1981 Reenactment) § 15–5–16. Although such sweeping criticism of the trial justice in respect to this issue is contradicted by the trial justice's otherwise thorough and thoughtful decision, we do believe that the alimony award should have been accompanied by more specific explanations both regarding its duration and the purposes it was intended to serve. In this connection, we observe that our recent cases that have dealt with this subject focus on the rehabilitative nature that an alimony award is designed to achieve. In *Whited v. Whited,* R.I., 478 A.2d 567, 570 (1984) (quoting *D'Agostino v. D'Agostino,* R.I., 463 A.2d 200, 202 (1983) ), we stated that " 'alimony in its modern form [is] a rehabilitative tool designed to provide support for an ex-spouse based on need.' " In *Lancellotti v. Lancellotti,* R.I., 481 A.2d 7, 9 (1984), we noted that the present statutory principles relating to divorce have modified the common-law notion that when a marriage ends, the husband has an indefinite duty to continue to support his former wife. In all of these recent cases, we have endeavored to point out that an award of alimony, if ordered, should, as one commentator has noted, be

" 'payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support.' Under [such a] plan, a court may make findings of reasonable capacity and expectations of future employability in making a present determination of when it would be proper for support to terminate." Note, *New Jersey Law—"Rehabilitative Alimony" as a Tool for the Encouragement of Spousal Self-Support—Is There Life After Arnold?, Arnold v. Arnold, 167 N.J. Super. 478, 401 A.2d 261 (App.Div.1979),* 3 W.N.E.L.Rev. 127, 132 (1980) (quoting *Turner v. Turner,* 158 N.J.Super. 313, 314, 385 A.2d 1280, 1280 (Ch.Div.1978) ). (Footnote omitted.)

In light of these observations, and further, in view of the fact that the wife at the time

---

3.  *See supra* note 2 and accompanying text.

of the trial was employed as a nurse, we remand the issue of alimony to the trial justice for reconsideration and modification in accordance with the purposes of "rehabilitative alimony"[4] set forth above.

■ We now examine the husband's claim that the trial justice was remiss in ordering the husband to pay from a significant portion of the proceeds of the husband's pension-plan fund the wife's counsel fees which were set at $3,000.[5] Under § 15–5–16, a justice of the Family Court may order a spouse to pay the counsel fees of the other spouse, subject to a prior consideration of a number of statutory criteria.[6] Under the opinions that have interpreted this statute, we have repeatedly held that " 'before the trial justice is warranted in making * * * an award [of counsel fees], he must find that the [spouse charged with payment] had a sufficient financial ability to pay such fees and that the [spouse who seeks counsel fees] is without property * * * available for that purpose.' " *Tarro v. Tarro*, R.I., 485 A.2d 558, 564 (1984) (quoting *Paradiso v. Paradiso*, 122 R.I. 1, 3–4, 404 A.2d 60, 61 (1979)). In the case at bar, the wife, as earlier mentioned, was granted the marital domicile, which was valued at $91,500, subject to an outstanding mortgage of $8,200. Although we held in *Tarro, supra*, that the nonliquidity of the marital asset assigned to the wife militated in favor of finding that she was without sufficient funds to pay counsel fees, we do not believe that this is an absolute doctrine to be applied in every case. Indeed, in the situation now before us, the mortgage on the marital domicile is relatively small. Consequently, this net worth could be used as an available asset to raise funds to defray this expense. In light of the probability that the marital domicile could so be used to generate funds, we vacate that part of the judgment that ordered the husband to pay the cost of his wife's attorney fees.

The final issue on appeal is the husband's contention that the trial justice should not have allowed the wife's eldest son to testify as a witness at trial. As can be gleaned from the record, the son, aged twenty-four and long since having been a resident of California, had arrived in Rhode Island on a vacation a week before trial, went immediately north on a skiing trip, and then returned to his mother's house in Cumberland two days before trial. He then accompanied his mother to the offices of her lawyer, and according to the testimony received by the court, a decision was made to put the son on as an additional witness. The husband contends that under Rule 33 of the Rules of Procedure for Domestic Relations for the Family Court of Rhode Island, the wife had a continuing duty to apprise the husband of additional witnesses who would be called for trial.

At the hearing, the trial justice, upon defendant's objection, allowed the testimony of the son *de bene*. The trial justice suggested that he was unpersuaded by the arguments of the husband's counsel, who urged that prejudice would accrue to his

---

**4.** For further discussion of rehabilitative alimony, see *Tarro v. Tarro*, R.I., 485 A.2d 558, 561 (1984); *Fisk v. Fisk*, R.I., 477 A.2d 956, 958 (1984); *Robinson v. Robinson*, 366 So.2d 1210, 1211–12 (Fla.Dist.Ct.App.1979); *Cann v. Cann*, 334 So.2d 325, 330 (Fla.Dist.Ct.App.1976); *Anderson v. Anderson*, 333 So.2d 484, 487 (Fla.Dist. Ct.App.1976); *Roberts v. Roberts*, 283 So.2d 396, 397 (Fla.Dist.Ct.App.1973); Ford, *Rehabilitative Alimony—A Matter of Discretion or Direction?*, 12 Fla.St.U.L.Rev. 285 (1984); Note, *Property Division and Alimony Awards: A Survey of Statutory Limitations on Judicial Discretion*, 50 Fordham L.Rev. 415, 429 (1981–82); Note, *Rehabilitative Spousal Support: In Need of a More Comprehensive Approach to Mitigating Dissolu-tion Trauma*, 12 U.S.F.L.Rev. 493, 494–96 (1978).

**5.** The husband was also ordered to continue making payments to extinguish a previously ordered counsel fee of $500.

**6.** Section 15–5–16 lists several factors to be considered by the trial justice before any award of counsel fees (or alimony): "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and [4] the state and the liabilities and needs of each of the parties."

client in that the witness had not been available for a deposition with which later to test his credibility. At the close of the testimony of the son, who was also subjected to cross-examination, the husband's attorney reiterated his objection. The trial justice noted the objection and made comments in consonance with the position that there was no conscious effort on the part of the wife to present the son as a surprise witness. The trial justice stated that he found that the son's testimony was cumulative of information that had earlier been offered during trial, but he apparently accepted the testimony as part of the evidence in the case.

In light of the extremely limited time the wife had in which to communicate to the husband the decision to have the son testify, as well as the fact that such testimony was cumulative to other evidence already presented and did not form the basis of any new finding of fact or serve as the linchpin by which the trial justice made a determination of a disputed issue, we cannot say that the trial justice abused his discretion or committed prejudicial error in allowing the son to testify.

Accordingly, and for the foregoing reasons, the husband's appeal is denied in part and sustained in part. The judgment in respect to counsel fees is vacated, and the case is remanded to the Family Court for further consideration on the issue of rehabilitative alimony.