John F. GORMLY, Jr.

v.

Linda R. GORMLY.

No. 98–272–Appeal.

Supreme Court of Rhode Island.

Nov. 1, 2000.

Thomas H. Quinn, Jr., Warren, for Plaintiff.

Fred L. Mason, Providence, Linda Gormly, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on September 27, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

John F. Gormly, Jr. (plaintiff) and Linda R. Gormly (defendant) were divorced on June 2, 1995. Pursuant to the final judgment of divorce, the trial justice divided plaintiff's retirement benefits from Hasbro, Inc., by the issuance of a Qualified Domestic Relations Order (QDRO), which was entered as an order of the court on

September 19, 1995. The QDRO provided that:

"[t]he Alternate Payee [defendant] shall be entitled to receive an amount equal to fifty (50%) percent of the Plan Participant's vested benefits under the Hasbro, Inc. Savings Plan and the Hasbro, Inc. Profit Sharing Plan [hereinafter collectively referred to as plan]. For purposes of the preceding sentence, the Plan Participant's accrued benefits shall be determined as of October 15, 1994, as if the Plan Participant terminated employment on such date. In satisfying the assignment under the preceding sentence, the shares transferred to, or on behalf of the Alternate Payee, shall be allocated 50% to each of the Plans. In no event shall this Order assign any benefit earned under *either* plan after October 31, 1994. The Alternate Payee shall not share in any employee or company contributions or any increases or decreases in such contributions made to the plans after October 31, 1994. The Alternate Payee shall not share in investment gains or losses attributable to the Alternate Payee's share of the account after October 31, 1994."

It further provided that:

"[t]he Family Court retains jurisdiction to amend this Order only for the purpose of establishing or maintain[ing] its qualification as a Qualified Domestic Relations Order under the Retirement Equity Act of 1984; provided that no amendment of this Order shall require the Plan to provide any type or form of benefit, or any option not otherwise provided under this Plan."

On January 23, 1996, defendant filed a motion to adjudge in contempt and for other relief. She sought to modify that portion of the QDRO which denied her interest and/or dividends from and after October 28, 1994.[1] The defendant argued that because of the delay in effectuating

the QDRO, the value of the plan had increased and, as a result, she was entitled to increased earnings. The defendant did not receive her QDRO settlement until March 1996, approximately seventeen months after the original date designated for dividing the plan.

The defendant's motion was heard on February 28, 1997. The defendant argued that she was entitled to the increase in value to plaintiff's 401(k) retirement plan that occurred between October 15, 1994, the date set forth in the QDRO for dividing the plan, and March 1996, when she actually received her settlement. The plaintiff argued that pursuant to the plain language of the QDRO, defendant was not entitled to any increases that had been earned under the plan after October 31, 1994. The defendant countered that her money had been held by plaintiff for seventeen months, during which time plaintiff had received the benefit of the use of her money. The trial justice reasoned that since the money had not been distributed until March 1996, defendant was entitled to the increase in the value of the plan, excluding any contributions made by the employer and plaintiff to the plan after October 1994.

Several conflicting orders were entered thereafter. Both plaintiff and defendant objected to the orders proffered by the opposing party. As a result, a hearing was held on October 24, 1997, to resolve the dispute. On October 27, 1997, the trial justice entered an order that provided in pertinent part:

"1. The $8275.58 figure is agreed to by both accountants.

"2. The income produced by said $8275.58 for the period 2/1/96 to date of distribution shall be added to said $8275.58.

"3. Said distribution shall be on or before October 31, 1997."

which appears to be a clerical error.

---

1. The defendant referred to October 28, 1994, rather than October 31, 1994, in her motion,

On November 13, 1997, plaintiff filed a notice of appeal from the order entered on October 27, 1997, and from the previous orders, entered on May 16, 1997, May 20, 1997, and May 21, 1997. The validity of the appeal has not been effectively challenged. Consequently, we shall proceed to decide this case on its merits.

The plaintiff argues that the trial justice abused his discretion in amending the QDRO, by overstepping the jurisdiction of the Family Court and by disregarding the plain and unambiguous language of the QDRO. The Family Court has jurisdiction over property issues relating to divorce. General Laws 1956 § 8–10–3(a) provides in pertinent part:

"There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trust, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce, bed and board and separate maintenance."

Any assignment of property by the Family Court "once made in a final decree shall be final, subject only to any right of appeal which the parties may have." G.L.1956 § 15–5–16.1(c). Additionally, the initial QDRO itself, entered on September 19, 1995, specifically provides that "[t]he Family Court retains jurisdiction to amend [the QDRO] only for the purpose of establishing or maintain[ing] its qualification as a [QDRO] under the Retirement Equity Act of 1984." Here, no appeal was ever taken from the initial QDRO, nor did either party seek to amend the QDRO for purposes of either establishing or maintaining its qualification as a QDRO.

However, in Rhode Island, it is well established that "[i]n a divorce action, the allowance or disallowance of amendments is a matter of discretion with the trial justice." *Whited v. Whited*, 478 A.2d 567, 571 (R.I.1984). "The trial justice is vested with wide discretion to divide the marital property justly and fairly between the parties." *Stevenson v. Stevenson*, 511 A.2d 961, 964 (R.I.1986). Unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings. *See Whited*, 478 A.2d at 571 (citing *Poirier v. Poirier*, 107 R.I. 345, 352, 267 A.2d 390, 394 (1970)). There has been no abuse of discretion by the trial justice in the present case. The money due defendant under the September 19, 1995 QDRO was not received by her until March 1996. In a hearing on February 28, 1997, the trial justice determined that defendant was entitled to the increase in value to her share of plaintiff's 401(k) plan during this interval, because the distribution of such plan had not occurred in a timely fashion—that is, defendant received her QDRO settlement seventeen months after the original date designated for division of the plan, during which time plaintiff had received the benefit of the use of her money. In essence, the trial justice neither changed nor amended the original QDRO. Rather, he merely gave defendant that which was rightfully hers: compensation for the use of her money.

For the reasons stated, the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Family Court.